UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

LAINIE S. WHITMAN,  )
   Plaintiff  )
    )
    )  Case No. 1:13-CV-136
v.  )  (MATTICE/CARTER)
    )
    )
CAROLYN W. COLVIN,  )
Commissioner of Social Security  )
   Defendant  )

### REPORT AND RECOMMENDATION

     This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

     This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Pleadings (Doc. 12) and Defendant's Motion for Summary Judgment (Doc. 18).

     For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

#### Plaintiff's Age, Education, and Past Work Experience

     Plaintiff was thirty seven years old at her alleged onset date, and she was thirty eight years old at the time of the ALJ's decision. Plaintiff graduated from high school at the age of twenty one and attended special education throughout her school career. She was the only one in the special education class that got a regular diploma (Tr. 296). The record indicates that she

performed past relevant work as a childcare assistant, a hostess, and a retail assistant (Tr. 143).

<u>Applications for Benefits</u>

Plaintiff filed an application for a period of disability and disability insurance benefits (DIB) and supplemental security income on July 22, 2010 (Tr. 94-109). She alleges a disability onset date of May 25, 2010 due to a knee injury, Type II diabetes, allergies, and a developmental disability that severely limited her reading, learning, and math skills (Tr. 118, 130). Her application was denied initially and upon reconsideration. Plaintiff then requested a hearing which was held before Administrative Law Judge Michael Swan on August 24, 2011 in Chattanooga, Tennessee (Tr. 9). The ALJ issued an unfavorable decision on October 6, 2011 (Tr. 5-15). On December 2, 2011, Plaintiff appealed to the Appeals Council (Tr. 4). The Appeals Council declined to review the claim (Tr. 1-3). Plaintiff timely filed a complaint with this Court. This case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

<u>Standard of Review - Findings of the ALJ</u>

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); <u>Abbot v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in

significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since May

3

25, 2010, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*).

3. The claimant has the following severe impairments: borderline intellectual functioning and degenerative joint disease of the left knee (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to occasional postural activities and work around heights; she is limited to semiskilled work activity with SVP ratings of 1 through 3 due to borderline intellectual functioning; she can work with the general public, children, supervisors, and coworkers; and she can adapt to infrequent changes.

6. The claimant is capable of performing past relevant work as a childcare worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 25, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f).

(Tr. 378-384).

## Issues Presented

1. Whether the ALJ erred by finding Plaintiff did not meet or equal Listing 12.05C.

2. Whether the ALJ erred by giving great weight to Vocational Expert (VE) testimony resulting in a lack of substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a Child Care Worker or could perform other jobs in the national economy.

**Relevant Facts:**

Plaintiff performed past relevant work as a childcare assistant, a hostess, and a retail assistant (Tr. 143). The vocational expert testified Plaintiff had performed past relevant work as

a childcare worker, a waitress, and a retail assistant (Tr. 21.) After being questioned by Plaintiff's attorney, Plaintiff testified she had never performed work as a waitress. She testified that her past relevant work was as a hostess and the work was accommodated by the waitresses assisting her when needed (Tr. 21-22). Plaintiff argues the vocational expert's testimony was never corrected. Plaintiff also clarified that her work as a childcare assistant was different from work as a childcare worker. Plaintiff testified her job consisted only of changing diapers and reading to children. She further testified that she was never left alone with the children, she had to be reminded of the steps necessary to change a diaper, and she had to take a book home with her a few days prior to reading to the children in order to study the book to be able to read it (Tr. 23). When questioned by Plaintiff's attorney, the vocational expert testified that the claimant's testimony as she performed her jobs was consistent with the Dictionary of Occupational Titles and how the average employer would allow you to perform your job. The VE noted that an SVP level care worker would not do lesson plans, would not plan activities, they would carry out activities as directed by someone else. When asked if that would be consistent with an SVP 3 child care worker, the VE responded, "As far as the reading, the person would read the same books over and over and over so once they've learned the book it would not be necessarily - - and for two years, it would be very simple." When asked how accommodating the employer would be with repeating the steps of the job or repeating how a task is supposed to be performed the VE replied, "Depends entirely on the employer, I don't know if there's any way to measure that." (Tr. 30, 31).

Plaintiff has demonstrated some deficits in mental functioning throughout her life. (Tr.194-221). On January 3, 1992, Plaintiff underwent IQ testing which revealed a verbal IQ of

5

Case 1:13-cv-00136-HSM-WBC   Document 20   Filed 05/13/14   Page 5 of 17   PageID #: 478

80, a performance IQ of 74, and a full scale IQ of 76 (Tr.195). Another IQ test conducted when Plaintiff was 15 years old revealed a performance IQ test of 68, verbal 85 and full scale 74 (Tr. 203). On October 13, 2010, Plaintiff again underwent IQ testing conducted by consultative examiner Dee M. Langford, Ed.D., HSP. (Tr. 295 – 305). The testing revealed a verbal comprehension score of 76, perceptual reasoning score of 67, a working memory score of 71, a processing speed score of 79, a full scale IQ of 68, and a general ability score of 69 (Tr. 298). Dr. Langford subsequently concluded she fell in the high end of the Mild Mental Retardation range but was able to speak fluently, read aloud relatively well, exhibit common sense which allowed her to live a productive life as wife and mother of two, noting she held a job for ten years before her recent termination from her job due to a false report from a new employee (Tr. 300, 301).

In addition to her mental limitations, Plaintiff has a history of knee problems. Medical records from May 2003 indicate complaints of bilateral knee pain which was treated with steroid injections (Tr. 222-223). On February 20, 2009, Plaintiff underwent a left knee arthroscopy, chondroplasty of patella, and lateral patella retinacular release as a result of her left knee patellar chondromalacia and subluxation (Tr. 249). Plaintiff underwent a second knee surgery on September 17, 2010 (Tr. 271). In addition to Plaintiff's knee impairments, she has a history of diabetes with an A1C level of 10.2 in 2010 and 8.4 in 2011 (Tr. 346 and 367).

**The ALJ's Decision**

The ALJ finds Plaintiff suffers from the following severe impairments: borderline intellectual functioning and degenerative joint disease of the left knee (Tr. 11). He finds Plaintiff retains the residual functioning capacity to perform light work as defined in 20 C.F.R. §

6

404.1567(b) and 416.967(b) except that she is limited to occasional postural activities and work around heights; she is limited to semiskilled work activity with SVP ratings of 1 through 3 due to borderline intellectual functioning; she can work with the general public, children, supervisors, and coworkers; and she can adapt to infrequent changes (Tr. 13). The ALJ finds Plaintiff capable of performing her past relevant work as a "childcare worker" (Tr. 383)[1]. The ALJ also notes the vocational expert testified a person of Plaintiff's age, education, work experience and residual functional capacity could perform the requirements of representative occupations such as assembler (1,200 jobs in the region and 125,000 jobs in the national economy), production inspector (1,100 jobs in the region and 125,000 in the national economy), and handpacker (1,000 jobs in the region and 120,000 jobs in the national economy) (Tr. 29, 383-384).

Analysis

Did Plaintiff Meet or Equal Listing 12.05C?

Plaintiff contends her impairments met or equaled section 12.05C of the Listing of Impairments (Listing 12.05) (Doc. 13, Plaintiff's Brief at 7-9). See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. When a claimant alleges her impairments meet or equal a listed impairment, she must present specific medical findings that satisfy all of the criteria of the particular listing. See 20 C.F.R. §§ 416.920(a)(4)(iii), (d), 416.925, 416.926; Sullivan v. Zebley, 493 U.S. 521, 530-32 (1990); Foster, 279 F.3d at 354; Hale v. Sec'y of Health and Human Servs., 816 F.2d 1078, 1082-83 (6th Cir. 1987). For reasons that follow, I conclude Plaintiff failed to prove her impairments met or equaled Listing 12.05(c). Substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or equal a listed impairment, including Listing 12.05(c)

---

1 Transcript page numbers 373 to 384 are found in Doc. 15, Supplement to Transcript.

(Tr. 379, Finding No. 4).     Listing 12.05 provides in pertinent part:

> *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

The introductory material to the mental disorders listings clarifies Listing 12.05, stating:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description in the introductory paragraph <u>and</u> any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (emphasis added).[2]

Plaintiff alleges that her impairments met subsection C of Listing 12.05.  Plaintiff, therefore, had to show that her impairments satisfied the diagnostic description found in the introductory paragraph of Listing 12.05 <u>and</u> that she had a valid IQ score of 70 or below and another severe impairment.  <u>See</u> 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00A, 12.05; <u>Foster</u>, 279 F.3d at 354-55.  Plaintiff failed to prove that her impairments satisfied <u>all</u> of the elements of Listing 12.05.

---

[2] The diagnostic description of mental retardation contained in the introductory paragraph of Listing 12.05 is consistent with accepted medical standards, which recognize that a diagnosis of mental retardation must be based on deficits in adaptive functioning as well as IQ scores.  <u>See</u> American Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 42 (4th ed. Rev. 2000) (<u>DSM-IV-TR</u>).

8

First, Plaintiff failed to provide evidence that her impairments met or equaled the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05. See 20 C.F.R. §§ 416.920(a)(4)(iii), (d), 416.925, 416.926; Zebley, 493 U.S. at 530-31; Foster, 279 F.3d at 354-55. Although Lee Langford, Ed.D., a psychologist, diagnosed Plaintiff with mild mental retardation in the upper range in 2010, this diagnosis was given well after Plaintiff reached age 22 (Tr. 301). In fact, Plaintiff was age 37 when Dr. Langford provided a diagnosis of mental retardation (Tr. 296). However, another licensed psychologist, William Tracy, Ed.D., who examined Plaintiff on January 3, 1992 when Plaintiff was eighteen years old, made a different finding (Tr. 194-98). Dr. Tracy concluded that Plaintiff's behaviors were consistent with borderline cognitive functioning (Tr. 197, 198). Dr. Tracy administered intellectual functioning tests and Plaintiff achieved a verbal IQ score of 80, performance IQ score of 74, and full scale IQ score of 76 (Tr. 196). Dr. Tracy explained that Plaintiff's full-scale IQ score of 76 was the "best single estimate of her present level of intellectual functioning, i.e., borderline" (Tr. 196). The findings of Dr. Tracy are supported by and consistent with the evidence in the record and provide further evidence to support the ALJ's finding that Plaintiff's impairments did not meet or equal a listed impairment, including Listing 12.05(c). See 20 C.F.R. § 404.1527(d), 416.927(d) (f); SSR 96-6p; Walters, 127 F.3d at 529-30; Cutlip, 25 F.3d at 287; Bogle, 998 F.2d at 347-48; see also Schisler, 3 F.3d at 568; Barber, 870 F. Supp. at 185-86.

Although Dr. Langford diagnosed Plaintiff in the upper end of mild mental retardation (Tr. 301), Dr. Langford also said that Plaintiff's verbal comprehension, working memory, and processing speed scores fell within the Borderline category (Tr. 298). Dr. Langford said Plaintiff appeared to read relatively well, had common sense, and lived a productive life (Tr. 298). Dr.

9

Langford did not indicate that Plaintiff had deficits in adaptive functioning before age 22, which are needed to satisfy the diagnostic description of mental retardation in Listing 12.05. No other doctor who treated or examined Plaintiff before age 22 found she had noteworthy deficits before age 22. Plaintiff thus failed to satisfy the threshold requirement in the introductory paragraph of Listing 12.05.[3] See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00A, 12.05.

Plaintiff offered evidence of low IQ scores from before age 22 but her evidence fails to prove that she had significant deficits in adaptive functioning before age 22. Although Plaintiff had one IQ score below 70 (performance IQ score of 68) during the developmental period, the overwhelming majority of Plaintiff's IQ scores that were taken before she reached age 22, fell in the borderline range (verbal IQ score of 85, full scale IQ score of 74, verbal IQ score of 80, performance IQ score of 74, and full scale IQ score of 76) (Tr. 195, 196, 203, 206). Although Plaintiff was enrolled in special education classes, she received a regular high school diploma (Tr. 296). She also reported receiving good grades of mostly A's, B's, and C's (Tr. 296). Plaintiff repeated the fourth grade, but she said she repeated the fourth grade because the principle lost her school records (Tr. 296). Plaintiff's school records do not show that she had significant deficits in adaptive functioning before age 22.

Other evidence undermines Plaintiff's contention that she had significant deficits in adaptive functioning before age 22. In 1983, Robert Currie, Ed.D., a psychologist, wrote a letter stating that Plaintiff had a severe reading, arithmetic, and language disorder (Tr. 214). However,

---

[3] Moreover, Listing 12.05 and the medical standards for diagnosing mental retardation require that the individual's significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifest during the developmental period. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05; DSM-IV-TR at 41.

Dr. Currie did not state that Plaintiff was mentally retarded (Tr. 214). Also, the San Angelo Independent School District performed a Comprehensive Individual Assessment on May 8, 1988, when Plaintiff was in the seventh grade (Tr. 204-06). Based on Plaintiff's performance on the WISC-R test, the school concluded Plaintiff's overall intellectual functioning was in the <u>borderline</u> range. The report stated that Plaintiff's scores were similar to the scores obtained in 1985 (Tr. 206). The San Angelo School District noted that Plaintiff had a learning disability but did not state that Plaintiff was mentally retarded (Tr. 204-06). Therefore, the record evidence does not show Plaintiff had deficits in adaptive functioning before age 22 (Tr. 194-98, 204-06, 214).

Plaintiff cites to her performance IQ score of 68 as support for her contentions, but the San Angelo School District, which was the entity who administered the WISC-R test that resulted in a performance IQ score of 68, specifically stated that Plaintiff's "overall intellectual function was in the borderline range" (Tr. 206). Even Dr. Langford's report seemed to suggest that Plaintiff might also function in the borderline range. Dr. Langford said that while Plaintiff's full scale IQ of 68 placed her at the upper end of the mild mental retardation category, her verbal comprehension, working memory, and processing speed scores fell within the borderline category (Tr. 298). Dr. Langford also found Plaintiff had an adequate capacity for abstract thinking and understanding (Tr. 297).

Plaintiff's daily activities and work history are also inconsistent with a finding of mental retardation and suggest that Plaintiff functioned more in the borderline range of intellectual functioning. Dr. Langford noted Plaintiff appeared to read relatively well, had common sense, and lived a productive life (Tr. 298). Plaintiff's daily activities of managing a home, taking care

11

of a family, and doing homework with her kids suggest that Plaintiff functioned more in the borderline range (Tr. 298). Plaintiff also worked in a day care center for ten years until she was allegedly fired based on a false report by a co-worker (Tr. 300). In her Work History Report, she said she worked with kids between the ages of infants to two years (Tr. 144). Plaintiff's job history undermines her allegation that she was mentally retarded.

Although Plaintiff stated at the hearing that she had problems understanding the books she read to the children at the day care center, Dr. Langford said Plaintiff read aloud relatively well (Tr. 300). Plaintiff also told Dr. Langford that she liked to read and do word searches (Tr. 298). Plaintiff stated on her Disability Report that she could read and understand English (Tr. 117). Plaintiff also said that she could write more than her name in English (Tr. 117). These activities are inconsistent with her allegation of mental retardation.

Plaintiff failed to show her impairments satisfied the diagnostic description in the introductory paragraph of Listing 12.05. Plaintiff thus failed to meet her burden of proving that her impairments met or equaled Listing 12.05(c). See 20 C.F.R. §§ 416.920(d)(a)(iii), (d), 416.925, 416.926; Zebley, 493 U.S. at 530-32; Foster, 279 F.3d at 354; Hale, 816 F.2d at 1082-83. Substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or equal a listed impairment, including Listing 12.05(c) (Tr. 379).

The Weight Given to the Vocational Expert:

Plaintiff next argues the ALJ erred by giving great weight to the VE testimony. He argues that testimony was inaccurate and inconsistent which resulted in a lack of substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a Child Care Worker or could perform other jobs in the national economy.

12

A claimant for Social Security disability benefits bears the burden of proving she was disabled within the meaning of the Social Security Act. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a) (2013); Foster, 279 F.3d at 353; Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir. 1993). The claimant's burden includes proving at step four of the sequential evaluation process that she cannot perform her past relevant work either as she performed it or as the work is generally performed in the national economy. See 20 C.F.R. § 404.1520(a)(4)(iv); Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997); Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987). To determine if Plaintiff could perform her past relevant work, the ALJ had to assess Plaintiff's residual functional capacity (RFC) (Tr. 380). See 20 C.F.R. § 404.1520(e), 416.920(e); Foster, 279 F.3d at 354. The ALJ found Plaintiff had the RFC to perform light work except she could do no more than occasional postural activities and work around heights (Tr. 380, finding No. 5). Due to Plaintiff's borderline intellectual functioning, the ALJ limited Plaintiff to semi-skilled work activity with Specific Vocational Preparation (SVP) rating of 1 through 3, work involving infrequent changes, and work with the general public, children, supervisors, and co-workers (Tr. 380, finding No. 5).

After assessing Plaintiff's RFC, the ALJ had to determine if Plaintiff could perform her past relevant work during the relevant period (Tr. 380). See 20 C.F.R. § 404.1527(a)(4)(iv), 416.927(a)(4)(iv). A Plaintiff bears the burden of proving she cannot perform her past relevant work either as she performed it or as it is generally performed in the national economy. See Walters, 127 F.3d at 529; Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987). As the ALJ noted, Plaintiff's past relevant work as a childcare worker, as she performed the job and as the job is generally performed in the national economy, did not require

13

performance of work related activities precluded by Plaintiff's RFC (Tr. 383-84). See U.S. Dep't of Labor, Dictionary of Occupational Titles (DOT), § 299.367-010, 1991 WL 672630 (4th ed. 1991). An ALJ may rely on a claimant's own description of her work to determine the demands of the job as she performed the job and on the DOT to determine the demands of a claimant's past relevant work as it is generally performed in the national economy. See 20 C.F.R. § 404.1560(b)(2), 416.960(b)(b(2); SSR 82-61. Plaintiff's description of her work provided substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a child care worker as she performed the job.

Plaintiff contends she could not perform her past relevant work as a childcare worker because the DOT does not include a job entitled "child care worker" and the most similar job, a nursery school attendant or childcare leader, requires an SVP of 4. Pl.'s Br. at 12. Even if Plaintiff could not perform her past relevant work as generally performed in the national economy or as described in the DOT because it required an SVP of 4, she failed to prove she could not perform her past relevant work as a childcare worker as she actually performed the job. See Walters, 127 F.3d at 529; Studaway, 815 F.2d at 1076. The ALJ asked the vocational expert (VE) if his testimony was consistent with the Dictionary of Occupational Titles. See Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 858 (6th Cir. 2010). The VE stated that his testimony was consistent with the DOT (Tr. 29). Plaintiff also claims that she cannot perform her past work because the ALJ's RFC limited her to work requiring an SVP of 1 to 3 (Doc 13, Plaintiff's Brief at 10).

The VE discussed the significance of an SVP of 3 (Tr. 30). Plaintiff's attorney asked the VE whether Plaintiff's testimony about her past work was consistent with the DOT and the VE

14

said it "would be consistent with an SVP 3 childcare worker" (Tr. 30). The VE also said that as for the reading, "the person would read the same books over and over and over, so once they've learned that book[,] it would not be necessarily – and for two years, it would be very simple (Tr. 30). Plaintiff has the burden of proving that she is unable to perform her previous type of work as she performed it or as generally performed in the national economy. Id. at 855; Studaway, 815 F.2d at 1076.

Furthermore, as the Commissioner argues, even if Plaintiff could not perform her past relevant work as childcare worker, the ALJ made an alternate finding that Plaintiff could perform other work in the national economy (Tr. 383-84). See 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). Based on the ALJ's hypothetical question, the VE testified that such an individual could perform work as an assembler, production inspector, or hand packer (Tr. 29). The VE's testimony was in response to a hypothetical question that set forth all the reasonable limitations Plaintiff had on her ability to work (Tr. 28-29). The ALJ, therefore, properly relied on the VE's testimony to find that Plaintiff could perform her past relevant work as a childcare worker or other work in the national economy (Tr. 383-84). See 20 C.F.R. §§ 404.1560(b)(2), (c), 416.960(b)(2), (c); Foster, 279 F.3d at 356-57; Varley v. Sec'y of Health and Human Servs., 820 F.2d 777, 779-80 (6th Cir. 1987); Studaway, 815 F.2d at 1076. Plaintiff failed to prove she could not perform the other jobs identified by the VE. See 20 C.F.R. §§ 404.1520(a)(4)(iv), (v), (f), (g), 416.920(a)(4)(iv), (v), (f), (g); Smith, 893 F.2d at 110; Studaway, 815 F.2d at 1076. Plaintiff does not appear to contest the ALJ's finding that she could perform other jobs (assembler, production inspector, and hand packer) in the national economy (Tr. 383-84

Finally, Plaintiff argues that the VE testified she worked as a waitress (Doc. 13, Plaintiff

15

Brief at 11). Even if the VE testified that she worked as a waitress (Tr. 21), the ALJ found that Plaintiff could perform her past work as a childcare worker (Tr. 383, Finding No. 6). Furthermore, the ALJ did not include her waitress job as past relevant work. At the administrative hearing, the Plaintiff's attorney asked Plaintiff whether she had ever worked as a waitress and Plaintiff said no (Tr. 21-22). If there was any confusion about Plaintiff's past work as a waitress, the issue was clarified at the administrative hearing, and the ALJ did not rely on the information.

For those reasons, I conclude the ALJ's decision is supported by substantial evidence. The Commissioner, and not the Court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly. See Perales, 402 U.S. 389, 402 (1971); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). Even if this Court disagrees with the ALJ's resolution of the factual issues, and would resolve those disputed factual issues differently, his decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Warner*, 375 F.3d at 390. Here, substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled.

Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

    (1) The plaintiff's motion for judgment on the administrative record (Doc. 12) be DENIED.

    (2) The defendant's motion for summary judgment (Doc. 18) be GRANTED.

    (3) The case be DISMISSED. [4]

    S/*William B. Mitchell Carter*
    UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).